# EXHIBIT C

Case 7:84-cr-00499-CS   Document 179-3   Filed 04/27/20   Page 2 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

2003 WL 23340511 (C.A.2) (Appellate Brief)
United States Court of Appeals,
Second Circuit.

UNITED STATES OF AMERICA, Appellee,

v.

Luan Lika Skender FICI, Nazif Vrladu, Bari Drishti, Mehmet Bici, Anver Kalbas, Stella Millaj, Defendants,

Xhevedet Lika, Defendant-Appellant.

No. 02-1787.

April 4, 2003.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# Brief for the United States of America

Benjamin Greenstein, Christine H. Chung, Assistant United States Attorneys

Of Counsel.

James B. Comey, United States Attorney for the Southern District of New York, Attorney for the United States of America.

## *i TABLE OF CONTENTS

| | |
|---|---|
| Preliminary Statement | 1 |
| Statement Of Facts | 5 |
| A. Lika's Offense Conduct. | 5 |
| B. The Sentencing Proceedings | 6 |
| C. Lika's Direct Appeal And § 2255 Motion | 7 |
| D. Lika's Motion Under Old Rule 35(a) To Vacate His Sentence | 8 |
| ARGUMENT: | |
| POINT ONE - This Court Lacks Jurisdiction To Hear Lika's Claims Because Former Rule 35(a) Does Not Permit Re-Sentencing Based On Indictment Or Trial Errors | 11 |
| POINT TWO - LIka's Claims Are Meritless In Any Event | 16 |
| A. The Alleged Violation Of Rule 6(f) Provides No Basis For Impugning Lika's Conviction | 17 |
| B. *Richardson* v. *United States* Casts No Doubt On The Validity Of The Second Superseding Indictment | 17 |
| 1. Applicable Law | 18 |
| 2. Discussion | 20 |
| *ii  C. *Richardson* v. *United States* Castes No Doubt On The Validity Of The Jury Charge | 21 |
| Conclusion | 25 |

## TABLE OF AUTHORITIES

*Cases*:

| | |
|---|---|
| *Bank of Nova Scotia* v. *United States*, 487 U.S. 250 (1988) | 14, 17 |
| *Heflin* v. *United States*, 358 U.S. 415 (1959) | 12 |
| *Hill* v. *United States*, 368 U.S. 424 (1962) | 10, 11, 16 |
| *McCleskey* v. *Zant*, 499 U.S. 467 (1991) | 16 |
| *Richardson* v. *United States*, 526 U.S. 813 (1999) | passim |
| *Ross* v. *United States*, 289 F.3d 667 (11th Cir. 2002) | 25 |
| *Santana-Madera* v. *United States*, 260 F.3d 133 (2d Cir. 2001) | 15, 24-25 |

| | |
|---|---|
| _Tyler_ v. _Cain_, 533 U.S. 656 (2001) ............................................... | 15 |
| _Underwood_ v. _United States_, 116 F.3d 84 (2d Cir. 1999) .................... | 4 |
| _United States_ v. _Cotton_, 122 S.Ct. 1781 (2002) ............................... | 14 |
| *iii  _United States_ v. _Alred_, 1144 F.3d 1405 (11th Cir. 1998) ............. | 23 |
| _United States_ v. _Bagaric_, 706 F.2d 42 (2d Cir. 1983) ..................... | 21 |
| _United States_ v. _Fatico_, 579 F.2d 707 (2d Cir. 1978) ..................... | 6, 7 |
| _United States_ v. _Fischer_, 205 F.3d 967 (7th Cir. 2000) ................... | 12-13 |
| _United States_ v. _Flaharty_ 295 F.3d 182 (2d Cir. 2002) .................... | 20 |
| _United States_ v. _Fuentes_, 954 F.2d 151 (3d Cir. 1992) ................... | 23 |
| _United States_ v. _Green_, 293 F.3d 886 (5th Cir. 2002) ....................... | 25 |
| _United States_ v. _Mannino_, 635 F.2d 110 (2d Cir. 1980) ................. | 23 |
| _United States_ v. _Morgan_, 346 U.S. 502 (1954) ............................... | 12 |
| _United States_ v. _Oliver_, 60 F.3d 547 (9th Cir. 1995) ................. | 14 |
| _United States_ v. _Schiff_, 876 F.2d 272 (2d Cir. 1989) ........................... | 12 |
| _United States_ v. _Stein_, 544 F.2d 96 (2d Cir. 1976) ......................... | 13 |
| _United States_ v. _Stewart_, 256 F.3d 231 (4th Cir. 2001) ................... | 25 |
| *iv  _United States_ v. _Young_, 745 F.2d 733 (2d Cir. 1984) .............. | 4, 19, 24 |
| _Statutes And Rules_: | |
| Act of Dec. 26, 1985, Pub.L. 99-217m, 99 Stat. 1728 ........................ | 9 |
| Fed. R.Crim. P. 6(f) ................................................................ | 13, 14, 16, 17 |
| Fed.R Crim P. 12(b)(3)(B) ................................................................ | 14 |
| Fed. R. Crim. P. 35 (1979) (amended Nov. 1, 1987) ...................... | passim |
| Sentencing Reform Act. Pub.L. No. 98-473, 98 Stat. 1987 (1984) ...... | 9 |
| 21 U.S.C. § 848 ................................................................ | 18, 19 |
| 28 U.S.C. § 2255 ................................................................ | passim |
| _Miscellaneous_: | |
| C.A. Wright 3Wright 3 Federal Practice and Procedure, Criminal 2d (1982) ................................................................ | 12 |

**\*1  Preliminary Statement**

Xhevedet Lika appeals from an order entered on December 17, 2002, in the United States District Court for the Southern District of New York, by the Honorable John S. Martin, Jr., United States District Judge, denying Lika's motion pursuant to former Rule 35(a) of the Federal Rules of Criminal Procedure to vacate his sentence.

Indictment SS 84 Cr. 499 (VLB) (the "Second Superceding Indictment") was filed on September 7, 1984, in 30 counts. Count One charged Lika and six  **\*2**  co-defendants with conspiring over a six-year period, from November 1978 to September 1984, to import heroin into the United States from Yugoslavia and Turkey, in violation of Title 21, United States Code, Section 963. Count Two charged Lika and seven co-defendants with conspiring in the same six-year period to distribute and possess with intent to distribute multi-kilogram quantities of heroin and cocaine, in violation of Title 21, United States Code, Section 846. Counts Three and Four charged Lika and one co-defendant, respectively, with operating a continuing criminal narcotics enterprise during this period, in violation of Title 21, United States Code, Section 848. Counts Five through Twenty-Nine charged various defendants with substantive offenses of distributing and possessing with the intent to distribute narcotics, in violation of

Title 21, United States Code, Section 841. Lika himself was charged in twenty-two of these counts with distributing heroin (Counts Five through Twenty-Six). Count Thirty charged Lika and four co-defendants with conspiring to participate in the

Case 7:84-cr-00499-CS    Document 179-3    Filed 04/27/20    Page 4 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

affairs of an illegal enterprise through a pattern of racketeering involving narcotics trafficking, murder, and attempted murder, in violation of Title 18, United States Code, Section 1962(d) ("RICO").[*]

**\*3** Prior to trial, the District Court severed for lack of venue numerous counts charging substantive narcotics violations.[*] Count Nineteen was dismissed as duplicative of Count Seventeen.

Trial commenced on October 29,1984, before the Honorable Vincent L. Broderick, United States District Judge, and concluded eleven weeks later on January 11, 1985, when the jury convicted Lika of conspiracy to import and distribute heroin (Counts One and Two, respectively), conspiracy to violate the RICO statute (Count Thirty), operating a continuing criminal narcotics enterprise (Count Three), and five substantive counts of heroin distribution (Counts Five through Eight and Twelve). Lika was acquitted on one substantive heroin charge of heroin distribution (Count Twenty-Two).

On March 13, 1985, Judge Broderick sentenced Lika to a life sentence on his conviction for engaging **\*4** in a continuing criminal enterprise. On Counts One and Two, which charged conspiracy, the District Judge deferred sentencing.[*] Upon Lika's convictions on the remaining counts, the District Court imposed an aggregate term of imprisonment of 65 years' imprisonment concurrent with the life term imposed for the CCE violation. Judge Broderick also imposed committed fines totaling $200,000.

On September 12, 1985, this Court affirmed Lika's conviction and sentence by summary order. *United States v. Fid,* 779 F.2d 37 (2d Cir. 1985) (table). On December 9, 1985, the United States Supreme Court denied Lika's petition for *certiorari*. *Lika v. United States*, 474 U.S. 1022 (1985).

On April 22, 1997, Lika filed a motion in the District Court pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. Judge Broderick denied Lika's motion on May 15, 1997.

On December 11, 2001, Lika filed a motion pursuant to former Rule 35(a) of the Federal Rules of Criminal Procedure to vacate his sentence. By order **\*5** dated December 9, 2002, Judge Martin denied Lika's motion.

This appeal followed. Lika is serving his sentence.

### Statement of Facts

### A. Lika's Offense Conduct

The proof at trial showed that from 1978 to 1984, Xhevedet Lika was a central figure in a wide-flung group of Albanian and Yugoslavian drug dealers who imported massive quantities of heroin from Yugoslavia and Turkey for distribution in New York City and elsewhere.[*]

The evidence revealed that members of this criminal enterprise imported and distributed in excess of fifty kilograms of high-purity Turkish heroin. Much of the heroin distributed in the New York area found its ay to the Lower East Side of Manhattan, where Lika supervised the crew responsible for distributing the imported heroin. Operating out of Middle Eastern restaurants and nightclubs, as well as Lower East Side bars frequented by middle-level drug dealers, Lika and his criminal associates were able to manage and control a multi-million dollar narcotics business.

**\*6** The group flourished by pooling resources to purchase narcotics, sharing and exchanging available supplies of narcotics, allocating sales territories, adjudicating disputes among its members, and arranging for bail and attorneys for incarcerated members. The conspirators were insulated from law enforcement infiltration by a con-mi on language, Albanian, and a common ethnic community, and thus Lika and his associates were able to operate their narcotics business with seeming impunity. Also, to ensure success and discipline, they unhesitatingly resorted to violence. Lika participated in murdering one co-conspirator,

Case 7:84-cr-00499-CS   Document 179-3   Filed 04/27/20   Page 5 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

Dujo Saljanin, after Lika and his associates came to suspect that Saljanin had stolen a kilogram of heroin. Saljanin lived just long enough to identify Lika in a dying declaration. Lika also attempted to murder another co-conspirator, Anesti Myshteri, who had stolen from Lika three kilograms of heroin, and conspired to murder three other individuals.

### B. The Sentencing Proceedings

Just prior to Lika's sentencing, the Government filed a lengthy presentence memorandum in which it disclosed, among other things, that during trial and thereafter Lika sought to have the prosecutor, Assistant United States Attorney ("AUSA") Alan M. Cohen, and the case agent, Special Agent John Delmore of the Drug Enforcement Administration ("DBA"), murdered.

On March 13, 1985, the date set for sentencing, counsel for Lika sought a hearing under *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), solely ***7** with respect to the threats to the prosecutor and the case agent. At the *Fatico* hearing held the same day, the Government called two witnesses: Rudolph W. Giuliani, then the United States Attorney for the Southern District of New York, and Agent.Delmore. Mr. Guiliani and Agent Delmore testified that three individuals, whom they identified only as "John Doe's," had independently volunteered information in December 1984 - in the midst of trial - that Lika had taken out contracts to have AUSA Cohen and Agent Delmore killed. (3/13/85 Tr. 87, 89, 90),* The defense tried to elicit the identities of the informants, but Judge Broderick sustained the Government's objections to these questions. (3/13/85 Tr. 112).

In imposing sentence, Judge Broderick noted that although Lika's case "has not involved the greatest amount of heroin that I have dealt with," it involved "the most reckless, ruthless, disregard for human life and human dignity that I have seen in my time in this courthouse, and Mr. Lika was the center of all that reckless disregard." (3/13/85 Tr. 143).

### C. Lika's Direct Appeal And § 2255 Motion

Lika appealed his conviction and sentence, arguing that: (1) the proof at trial disclosed multiple unrelated narcotics conspiracies rather than the ***8** single conspiracies alleged in Counts One and Two; (2) the District Court committed reversible error in refusing to grant a mistrial following the publication of a newspaper article discussing the indictment of Martin Light, counsel for one of Lika's co-defendants; and (3) in the course of the *Fatico* hearing, the District Court improperly precluded Lika from learning the identities of the individuals who provided information that Lika had plotted the murders of AUSA Cohen and Agent Delmore.

This Court rejected Lika's challenge and affirmed his conviction and sentence by summary order. *United States v. Fid*, 779 F.2d 37 (2d Cir. 1985) (table). The Supreme Court denied *certiorari*. *Lika v. United States*, 474 U.S. 1022 (1985).

On April 22, 1997, Lika filed a § 2255 petition in the District Court to vacate his conviction and sentence, raising the same challenges to his *Fatico* hearing that he raised on direct appeal, and requesting a hearing based on new evidence that one of the unnamed sources who had provided the information elicited at the *Fatico* hearing had lied. On May 15,1997, the District Court denied the motion.

### D. Lika's Motion Under Old Rule 35(a) To Vacate His Sentence

On December 11, 2001, more than fifteen years after the imposition of sentence, Lika filed in the District Court a motion to vacate his sentence pursuant to the version of Rule 35(a) of the Federal Rules of Criminal Procedure that applies to offenses ***9** committed before November 1, 1987.* In his motion, ***10** Lika argued that his sentence should be vacated on several grounds: (1) that the record did not indicate that the grand jury returned the Second Superseding Indictment in open court (A. 43); (2) that the Second Superseding Indictment failed to identify the elements of 21 U.S.C. § 848, the continuing

Case 7:84-cr-00499-CS    Document 179-3    Filed 04/27/20    Page 6 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

criminal enterprise statute under which Lika was charged, with the particularity required by the Supreme Court's decision in [*Richardson v. United States*, 526 U.S. 813 (1999)](#) (A. 43-44); and (3) that the District Court did not instruct the jury, as required by *Richardson v. United States*, that in a [§ 848](#) case it must unanimously find not only that the defendant committed a "continuing series of violations," but the three specific violations constituting the "continuing series." (A. 53).

In a Memorandum Order dated December 9, 2002, Judge Martin denied Lika's motion under former Rule 35(a). (A. 75). The District Court found that Lika complained only of indictment and trial errors and that under controlling Supreme Court precedent the former rule "may not be used as a vehicle to examine 'errors occurring at trial or other proceedings prior to the imposition of sentence.' " (A. 75 (quoting [*Hill v. United States*, 368 U.S. 424, 430 (1962)](#)).

**\*11 ARGUMENT**

**POINT ONE**

**This Court Lacks Jurisdiction To Hear Lika's Claims Because Former Rule 35(a) Does Not Permit Re-Sentencing Based On Indictment Or Trial Errors**

On appeal, Lika argues that a motion under former Rule 35(a) was the appropriate vehicle by which to raise his allegations of error. In an attempt to end-run the Supreme Court's holding in *Hill* that former Rule 35(a) does not permit redress for "errors occurring at trial or other proceedings prior to the imposition of sentence," [368 U.S. at 430,](#) Lika argues that his sentence was "illegal" within the meaning of [Rule 35(a)](#) because it was imposed on the basis of "false assumptions." (Br. 12). The allegedly "false assumptions" specified by Lika con-sist of the District Court's purportedly wrongful disregard of the same indictment and trial "errors" Lika identified in his motion in the District Court. Specifically, Lika attacks: (1) Judge Broderick's "false assumption" that the Second Superseding Indictment was returned by the Grand Jury in open court, although there is no evidence that the return was made in open court (Br. 12-14); (2) Judge Broderick's "false assumption" that the Second Su-perseding Indictment identified all elements of the offense under [21 U.S.C. § 848](#) as required by [*Rich-ardson v. United States*, 526 U.S. 813 (1999)](#) (Br. 14-15); and (3) Judge Broderick's purportedly mis-taken assumption that the jury charge relating to the allegation of a CCE violation was correct. (Br. 15-20).

**\*12** Putting aside the question whether these "as-sumptions" by the sentencing court were indeed "false," an issue addressed below in Point II, they are certainly not grounds for relief under former Rule 35(a). The version of [Rule 35](#) that Lika in-voked provides that a court "may correct an illegal sentence at any time." A sentence is only "illegal" for purposes of former Rule 35 when it is not authorized by the judgment of conviction. *See* [*United States v. Morgan*, 346 U.S. 502, 506 (1954)](#) ("Sentences subject to correction under that rule are those that the judgment of conviction did not autho-rize."). In other words, former Rule 35 permits cor-rection of a sentence when it is above the applicable statutory maximum, or multiple terms are imposed for the same offense, or the "terms of the sentence" are illegal or unconstitutional. [*Hill*, 368 U.S. at 430;](#) *see also* [*Heflin v. United States*, 358 U.S. 415, 418 (1959)](#) (question under former Rule 35 is "whether the sentence imposed was illegal on its face"). Former Rule 35, however, "presupposes a valid conviction," C.A. Wright, 3 [Federal Practice and Procedure, Criminal 2d, § 582 at 380-81 (1982)](#), and thus cannot serve as a means of "re-examin[ing] errors occurring at the trial or other proceedings prior to imposition of the sentence." [*Hill*, 368 U.S. at 430;](#) *see also* [*United States v. Schiff*, 876 F.2d 272, 274 (2d Cir. 1989)](#) ("It is well established that a motion under [Rule 35](#) can only be used to correct an illegal sentence, and not to correct trial errors or errors in other presentencing proceedings"); [*United States v. Fischer*, 205 F.3d 967, 972 (7th Cir. 2000)](#) ("a motion under Fed. R. Grim. P. 35 addresses only the possible illegality of the *sentence* itself, not the **\*13** validity of the underlying *conviction")* (emphasis in original).

Under this standard, it is plain that former Rule 35 does not provide a means for Lika to obtain review of any of the claims identified in his motion, notwithstanding his attempts to characterize those claims as complaints about the "assumptions" underlying the sentence. [*] For example, Lika's asser-tion that the grand jury failed to return the Second Superseding Indictment in open court, in violation of Rule 6(f) of the Federal Rules of Criminal Procedure, patently attacks the validity of the conviction, and accordingly *Hill* bars him from pursuing the claim under former Rule 35. [**] Similarly, Lika's **\*14** claims under *Richardson* that the CCE count in the Second Superseding Indictment was insufficiently specific and that the Court erroneously charged the jury with respect to that count call into question the validity of Lika's conviction; thus they cannot be pursued under former Rule 35(a) either. See *Hill*, 368 U.S. at 430; **\*15** *United States v. Fischer*, 205 F.3d at 972 (challenges under *Richardson* are inappropriately brought under former Rule 35(a) because they are not attacks on the sentence but rather on the conviction, and should thus be reserved for motions to vacate the conviction under § 2255).

Lika, no doubt, has brought this motion pursuant to Rule 35(a) because the more appropriate means of challenging the validity of his conviction - filing a motion under § 2255 - is even more clearlybarred. Because Lika brought a habeas petition in 1997, the instant motion would be reviewed under the standard for second or successive motions. Such motions can be brought only if they are based on either "newly discovered evidence" or a "new rule of constitutional law, made retroactive by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255 ¶8. Lika's motion meets neither requirement. His assertion of indictment error is not predicated on new evidence or upon any new rule of constitutional law. Similarly, *Richardson* did not announce any "constitutional" rule, and in any event has never been held by the Supreme Court to apply retroactively. See *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (for a new constitutional rule to apply retroactively to a second or successive habeas petition, the Supreme Court itself must announce that the rule applies retroactively on collateral review). [*] Even if re-styled as a § 2255 motion, **\*16** then, Lika's motion would fail to satisfy even the gatekeeping requirements applicable to second or successive motions under § 2255. [*]

Former Rule 35 does not provide, as Lika would have this Court find, a limitless period of time in which to attack the validity of one's conviction. *Hill* directly so held. Judge Martin properly declined to grant relief below.

### POINT TWO

### Lika's Claims Are Meritless In Any Event

Even assuming that former Rule 35(a) provided an appropriate procedural vehicle for the claims **\*17** Lika advances, those claims are meritless in any event. Lika's contentions of indictment and trial error are without basis even if examined as if they had been raised on direct review.

#### A. The Alleged Violation Of Rule 6(f) Provides No Basis For Impugning Lika's Conviction

Lika asserts that because "there is no evidence the grand jury returned the second superseding indictment in open court," there was a violation of Rule 6(f) of the Federal Rules of Criminal Procedure. (Br. 12-14).

First, the "lack of evidence" that the Second Superseding Indictment was returned in open court does not come near to establishing that the indictment was not in fact returned in open court. But in any event, for Lika to establish that any violation of Rule 6(f) warranted dismissal of the Second Superseding Indictment, he would have to establish prejudice from the purported violation. See *United States v. Oliver*, 60 F.3d at 549; *Bank of Nova Scotia v. United States*, 487 U.S. at 254-55. Lika does not even allege any manner in which any Rule 6(f) violation worked to his detriment. Rule 6(f), then, provides no basis for resentencing.

Case 7:84-cr-00499-CS    Document 179-3    Filed 04/27/20    Page 8 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

### B. Richardson v. *United States* Casts No Doubt On The Validity Of The Second Superseding Indictment

Similarly without basis is Lika's contention that the Supreme Court's precedent in *Richardson* demonstrates deficiencies in the Second Superseding Indictment. Lika argues that the indictment failed **\*18** to identify three elements of the CCE offense: the series of felony predicates, "the people as to whom Lika occupied a position of supervisor, manager, or organizer," and the "linkage" between the felony pre dicates and substantial income or resources. (Br. 14-15).

### 1. Applicable Law

Title 21, United States Code, Section 848(c) provides that "a person is engaged in a continuing criminal enterprise" if:
(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is part of a continuing series of violations of this subchapter or subchapter II of this chapter -

(A) which are undertaken by such person in concert with five or more persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources,

21U.S.C. § 848(c).

**\*19** The Supreme Court in *Richardson* held that under § 848(c)(2), a jury must unanimously agree "about which specific violations make up the 'continuing series of violations.' "526 U.S. at 815. The Court assumed, without deciding, that three violations of the federal drug laws were a sufficient number to constitute a "series." *See id*. at 818.[*]

In holding that each "violation" in the "continuing series" itself constituted an element of the CCE crime, *see* 526 U.S. at 817-19, *Richardson* by implication requires that an indictment alleging a CCE violation specify "three or more discrete violations" of the federal narcotics laws, *id*, at 828 (Kennedy, J., dissenting). *The Richardson* majority, however, expressly rejected the view expressed by the dissent that a "necessary consequence," of the Court's holding is that each predicate violation (as opposed to the "continuing series" as a whole) will have to generate substantial income or resources, and that each must involve five people. *See id*. at 830-31 (Kennedy, J., dissenting). The Court stated unequivocally: "To the extent the dissent suggests that those other statutory requirements must be satisfied with respect to *each* underlying crime, it is clearly wrong." *Id.* at 823 (majority opinion).

### \*20  2. Discussion

*Richardson* does not in the least impugn the validity of the Second Superseding Indictment. Count Three alleged that Lika engaged in a "continuing criminal enterprise":

> in that he did violate Title 21, United States Code, Sections 812, 841(a)(l), and 841(b)(l)(A) as alleged in Counts Five through Twenty-Six of this Indictment, which are incorporated by reference

herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes....

(A. 15). In specifying as part of the "continuing series of violations" the allegations in more than three of the other counts in the indictment that Lika violated provisions of Title 21, Count Three identified "three or more discrete violations" of the federal narcotics laws. *Id.* at 828 (Kennedy, J., dissenting); *see also* United States v. Flaharty, 295 F.3d 182, 198 (2d Cir. 2002) (holding that CCE count describing the felonies constituting the "continuing series of violations" simply as "felony convictions of... 841(a)(l) and 846" satisfies *Richardson*).

Nor was the Second Superseding Indictment deficient in failing to identify "the people as to whom Lika occupied" a managerial role, or the "linkage" between the felony predicates and substantial income or resources. (Br. 14). "An indictment need only track the language of the statute **\*21** and, if necessary, to apprise the defendant 'of the nature of the charge against him,'... state time and place in approximate terms." United States v. Bagaric, 706 F.2d 42, 61 (2d Cir. 1983) (quoting Russell v. United States, 369 U.S. 749, 766 (1962)). Here, the Second Superseding Indictment tracked the statutory language by alleging that Lika engaged in a "continuing series of violations"

> in concert with at least five other persons with respect to whom [he] occupied the position of organizer, supervisor and manager and from which continuing series of violations [he] obtained substantial income and resources.

(A. 15). Lika identifies no authority that requires a CCE count to identify the five people as to whom the defendant occupied a supervisory role or management position. Moreover, he is simply wrong in contending that the Second Superseding Indictment failed to allege a "linkage" between the predicate violations and substantial income and resources derived therefrom; the indictment specified that Lika was charged with obtaining income and resources "from" the continuing series of violations. (A. 15). Again, Lika advances no authority that establishes that this allegation was inadequate.

### C. *Richardson v. United States* Casts No Doubt On The Validity Of The Jury Charge

Lika's final attack on the validity of his conviction consists of a claim that Judge Broderick's jury charge relating to the CCE count was "not consistent **\*22** with *Richardson*" because: 1) there was "no evidence" that Lika obtained substantial resources from the crimes set forth in the Indictment and "no indication" that he acted as a supervisor, organizer or manager with respect to five or more people; and 2) the charge wrongly stated that a "middleman in a drug transaction" may be a supervisor or manager. (Br. 19).

The first contention is a *non sequitur*. As discussed above, the Supreme Court in *Richardson* limited its holding to a requirement that individual violations within the "continuing series" be proven unanimously, and explicitly rejected the dissent's suggestion that its holding extended in any fashion to the other statutory requirements. It is therefore clearly unavailing for Lika to quote Justice Kennedy's dissenting opinion (Br. 16), in an attempt to wring from *Richardson* any holding even relevant to the requirements that a defendant obtain "substantial income" from his series of crimes, or organize or supervise five others.

In addition, Lika's assertion that there was no proof that he derived substantial income from his narcotics offenses or that he organized or supervised five others obviously demonstrates no error in Judge Broderick's charge. Had the jury concluded that

Case 7:84-cr-00499-CS   Document 179-3   Filed 04/27/20   Page 10 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

there was no proof supporting the allegations in Count Three of the Second Superseding Indictment, it would have acquitted Lika on that Count. Nothing about the quantum of proof adduced at trial, however - a quantum which in any event the jury found adequate to satisfy the "beyond a reasonable *23 doubt standard" - demonstrates error in the charge.[*]

Lika also fails to establish that Judge Broderick erred in referring in his charge to the possibility that a "middleman" may qualify as an organizer, supervisor, or manager. Lika cites in support of his contention two precedents in which the court reversed the application of a managerial role enhancement under the United States Sentencing Guidelines. (Br. 19-20 (citing *United States v. Aired*, 144 F.3d 1405, 1422 (11th Cir. 1998); *United States v. Fuentes*, 954 F.2d 151,153 (3d Cir. 1992)). *United States v. Mannino*, 635 F.2d 110 (2d Cir. 1980), is the controlling precedent relevant to the interpretation of the CCE statute, however. In *United States v. Mannino*, this Court held that the defendant's "very success as a middleman" was relevant *24 to the determination of whether he was an organizer, supervisor or manager, because the defendant's "vast network of purchasers and sources of immense supply., reveal [ed] his essential function" as an organizer. *Id.* at 117. Judge Broderick's charge thus contained no misstatement of the law.

Ultimately, the only potential *Richardson* error in this case is one of which Lika does not complain on appeal: the District Court's failure to instruct the jury that to convict on the CCE offense it must reach a unanimous decision with respect to which predicate violations constitute the "continuing series of violations." But failure of the District Judge to provide appropriate jury instructions under *Richardson* is subject to harmless-error review, *see Santana-Madera v. United States*, 260 F.3d at 139, and Lika cannot demonstrate any harm from any *Richardson* error. Here, the jury unanimously convicted Lika of seven felony narcotics offenses that constitute qualifying "violations" under Title 21, Section 848(c)(2) - a § 846 distribution conspiracy, a § 963 importation conspiracy, and five substantive distribution and possession with intent to distribute offenses based on separate instances of distribution and possession. Thus, any three of the seven violations satisfy the requirements established by *Richardson* and *United States v. Young*, 745 F.2d at 747, that a "continuing series of violations" consist of at least three predicate offenses, each of which the jury unanimously finds proven. See *Santana-Madera*, 260 F.3d at 141 (*Richardson* error is harmless in light of the jury's unanimous findings that the defendant committed other conspiracy and substantive *25 offenses arising from the same ongoing narcotics business alleged to be the continuing criminal enterprise); *United States v. Green*, 293 F.3d 886, 890 (5th Cir. 2002) (*Richardson* error was harmless where record established that jury agreed on three specific narcotics violations); *Ross* v. *United States*, 289 F.3d 667, 683 (11th Cir. 2002) (*Richardson* error harmless where the jury would have unanimously found a third specific narcotics violation if properly instructed); *United States* v. *Stewart*, 256 F.3d 231, 254-55 (4th Cir. 2001) (*Richardson* did not affect defendant's "substantial rights" where jury found ten specific narcotics violations).

## CONCLUSION

**The District Court's denial of Lika's** Rule 35(a) **motion should be affirmed**.

## Footnotes

| | |
|---|---|
| * | The original Indictment, 84 Cr. 499 (VLB), filed on July 31, 1984, charged Lika and two co-defendants with engaging in a narcotics conspiracy, in violation of Title 21, United States Code, Section 846, and with substantive narcotics offenses. |

  On September 5, 1984, the First Superseding Indictment, S 84 Cr. 499 (VLB), adding four defendants, was filed in thirty counts. The Second Superseding Indictment, on which trial was had, made only minor changes to the prior Indictment. S 84 Cr. 499 (VLB).

\* Counts Nine through Eleven, Thirteen through Twenty-One, and Twenty-Three to Twenty-Seven charged distribution of and possession with intent to distribute heroin in the Eastern District of New York. These counts were severed after the defendants variously named in the counts (among them, Lika) declined to waive venue.

\* At the time of Lika's sentencing, this Court's precedents recognized narcotics conspiracy offenses to be lesser-included offenses of a continuing criminal enterprise, *see Underwood v. United States*, 116 F.3d 84,86 (2d Cir. 1999) (citing *United States v. Young*, 745 F.2d 733, 748-50 (2d Cir. 1984)), and thus the District Judge could not impose separate sentences on the conspiracy counts, once Lika was sentenced on his CCE conviction

\* The facts relating to Lika's convictions are set forth in greater detail in the Government's brief in Lika's direct appeal, to which we respectfully refer the Court. *See* Brief for Appellee United States of America, *United States v. Fid*, 779 F.2d 37 (2d Cir. 1985) (table) (No. 85-1086).

\* "[Date] Tr." refers to a transcript of the proceedings on the date specified; "Br." refers to Lika's opening brief; and "A." refers to the appendix filed with Lika's brief.

\* The version of Rule 35 invoked by Lika was in effect until November 1, 1987, and applies to all offenses, like Lika's, that were committed before that date. Sentencing Reform Act, Pub.L. No. 98-473, 98 Stat. 1987, 2015 (1984); Act of Dec. 26, 1985, Pub.L. 99-217m, 99 Stat. 1728 (postponing the effective date from 1986 to 1987). Former Rule 35 provided:
(a) Correction of Sentence. The court may correct an illegal sentence at anytime and may correct a sentence imposed in an illegal manner within the time provided for the reduction of sentence.
(b) Reduction of Sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

\* Lika wrongly relies upon *United States v. Stein*, 544 F.2d 96 (2d Cir. 1976), for his position (Br. 15), that Rule 35(a) calls for the correction of a sentence imposed on the basis of false information. *Stein* did not involve any challenge to the underlying conviction, and this Court thus held only that the reach of former Rule 35 extended to deficiencies in the sentencing process that impair the defendant's ability to present facts relevant to sentencing. *See id*. at 102 ("[M]aterial false assumptions *as to any facts relevant to sentencing[]* renders the entire sentencing procedure invalid as a violation of due process") (quoting *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970)) (emphasis sup-plied).

\*\* Lika goes so far as to assert that the pur-ported violation of Rule 6(f) constituted a "jurisdic-tional" defect. (Br. 12-13). This claim is wrong. *See United States v. Oliver*, 60 F.3d 547, 549 (9th Cir. 1995) (failure to comply with Rule 6(f) not ground for reversal of conviction absent prejudice; errors in grand jury indictment procedure are subject to harmless-error analysis unless "the structural protections of the grand jury have been compro-mised as to render the proceedings fundamentally unfair") (quoting *Bank of Nova Scotia v. United States*, 487 U.S, 250, 254-55 (1988) (prosecutorial misconduct in grand jury not a basis for dismissing indictment absent prejudice to the defendant)); *see also United States v. Cotton*, 122 S.Ct. 1781, 1785 (2002) (Supreme Court precedents decided after *Ex parte Bain*, 121 U.S. 1 (1887), "confirm that defects in an indictment do not deprive a court of its power to adjudicate a case").
Lika was obligated to raise any claim of a defect in the indictment before trial. Fed. R. Grim. P. 12(b)(3)(B) (motion alleging a defect in the indictment or information must be made before trial). In addition, because any violation of Rule 6(f) was subject to harmless-error analysis, Lika would have to establish prejudice to be entitled to relief. Lika does not even contend that he suffered any prejudice from the purported violation.

Case 7:84-cr-00499-CS   Document 179-3   Filed 04/27/20   Page 12 of 12

UNITED STATES OF AMERICA, Appellee, v. Luan Lika..., 2003 WL 23340511...

| | |
|---|---|
| \* | The Second Circuit has held that *Richardson* applies retroactively on collateral review, *see* [Santana-Madera v. United States](), 260 F.3d 133, 138-39 (2d Cir. 2001), but only to first habeas petitions. *See id*. at 137 n.2. |
| \* | An additional reason that Lika's motion would be procedurally barred even if cast as a habeas petition is Lika's failure to raise his current claims on direct appeal or in his initial habeas petition. To excuse this procedural default he would have to show "cause" for failing to raise the claims earlier and "prejudice" from the Court's decision not to consider them now. *See* [McCleskey v. Zant](), 499 U.S. 467, 496 (1991). Putting aside the question whether Lika could demonstrate "cause" for failing to raise his claims earlier, he cannot claim that the Court's refusal to entertain the current [Rule 35]() motion causes him any "prejudice." None of his arguments based on *Richardson*, which does not apply on second or successive habeas petitions, nor his argument based on [Rule 6(f)](), which was waived because of Lika's failure to raise it before trial, are even cognizable, much less meritorious, as is discussed below in Point II. |
| \* | In [United States v. Young](), 745 F.2d 733, 747 (2d Cir. 1984), this Court held that a "continuing series of violations" consists of at least three predicate violations. |
| \* | The evidence at trial was indeed overwhelming that Lika was substantially enriched by his series of narcotics violations and that he supervised at least five people. As the head of the distribution wing of the conspiracy based on the Lower East Side, Lika routinely purchased over the six-year period of the conspiracy multiple-kilogram quantities of heroin for re-sale. *See* Brief for Appellee United States of America, *United States v. Fid*, 779 F.2d 37 (2d Cir. 1985) (table) (No. 85-1086), at 7-32. He also was the leader of, at a very minimum, the crew that sold heroin for him, although the proof easily established that Lika rose to become a leader of the entire enterprise charged in the Second Superseding Indictment. *Id.* at 5-6. |

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.