UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                    ORDER

XHEVEDET LIKA,                        84-CR-499 (CS)

                  Defendant.
------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Xhevedet Lika's renewed motion for reduction of sentence under 18 U.S.C. § 3582(c)(1), known as "compassionate release." (Doc. 187.)[1]

      In 1985 the Honorable Vincent L. Broderick sentenced Defendant to an aggregate sentence of 65 years' imprisonment, plus a concurrent sentence of life imprisonment, for his convictions for, among other things, conspiracy to import heroin, operating a continuing criminal enterprise, and participating in a racketeering conspiracy involving narcotics trafficking, murder and attempted murder. He has now served approximately thirty-five years in prison. He is incarcerated at the Bureau of Prisons' Federal Medical Center in Butner, North Carolina ("FMC Butner"). As of today, according to the BOP website, four inmates and three staff at that facility are positive for COVID-19; one inmate and seven staff have recovered; and none have died.

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not

---

[1] When they are able to do so, the parties are directed to send unredacted hard copies of their submissions to chambers for filing under seal.

be a danger to the safety of any other person or the community.  Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons:  1) the defendant has a terminal medical condition or because of a serious health condition or impairment is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 10 years or 75% of his sentence, and is experiencing serious deterioration in health as a result of aging; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above.  The burden is on the defendant to show he is entitled to relief.  *United States v. Ebbers*, No. 02-CR-1144, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).  Defendant does not suggest he meets any of the first three categories, but argues that the risk the corona virus pandemic poses to one with his health conditions meets the fourth category.

      The Government argues that Defendant may not take advantage of § 3582(c)(1)(A) because he was sentenced before that statute became effective in 1987, and it appears that the Government is correct.  *See United States v. Rivera*, No. 86-CR-1124, 2020 WL 2094094, at *3 (S.D.N.Y. May 1, 2020).  Title 18, United States Code, Section 4205(g), which applies to defendants sentenced before the effective date of § 3582(c), permits a sentence reduction only if the Bureau of Prisons ("BOP") moves for such relief, *see id.* at 4, and it has not done so here.  I go on to consider the merits in an excess of caution, however, because to do so seems consistent with congressional intent in enacting the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194.  That statute modified Section 3582(c)(1)(A) to allow a defendant, not just BOP, to move for sentence reduction.  It is not clear why Congress would have wanted to extend that privilege to prisoners sentenced since 1987 but not to those sentenced before.

The Government further notes that even if § 3582(c)(1)(A) applies, Defendant's application is premature because he has not exhausted administrative remedies. Defendant did not ask BOP for compassionate release under § 3582(c)(1)(A) until April 28, 2020 – his earlier request having been for release to home confinement under 18 U.S.C. § 3624(c) – and § 3582(c)(1)(A) permits a defendant to apply to the Court for relief only after thirty days have elapsed since his request to BOP. Because thirty days will have elapsed as of today, I turn to the merits.

Defendant is 70 years old. He recently completed radiation treatment for prostate cancer, is on a hormone medication called Lupron for that condition, and has a good prognosis. He was treated for hepatitis C in 2018. His "A1C" or blood sugar level was elevated on one occasion in December 2019, but – although getting appropriate medical attention in prison – he has not been diagnosed with or treated for diabetes. According to the Centers for Disease Control ("CDC"), factors that put one at increased risk for a severe case should one contract COVID-19 include age over 65, being immunocompromised and having liver disease. The CDC indicates that cancer treatment can cause one to be immunocompromised, although Defendant has not provided evidence as to the extent to which that state might result from completed radiation treatment and/or Lupron (as opposed to, for instance, chemotherapy). Nor has he provided evidence as to whether asymptomatic hepatitis C amounts to the sort of liver disease that puts one at increased risk. FMC Butner appears thus far to have been fairly successful in containing the spread of COVID-19. I will assume, however, that Defendant's age and health, combined with his confinement in a prison, where social distancing is presumably not possible, constitute an "extraordinary and compelling reason" within the meaning of 18 U.S.C. § 3582(c)(1)(A).

I must next consider the § 3553(a) factors.  They weigh strongly against release.  The record of Defendant's case is not fully available, but what is available shows, as Judge Broderick's sentence reflects, that Defendant's conduct qualifies him as among the worst of the worst.  He was the most culpable member of a large-scale heroin importation scheme, and he used violence and ruthlessness to maintain his power.  His offense apparently included a murder, an attempted murder and a conspiracy to murder three others.  His conduct before and during his trial was equally reprehensible, showing an astonishing level of contempt for the Court and the judicial system.  Before his trial he was twice caught with smuggled drugs in the Metropolitan Correctional Center.  He and an associate were caught attempting to smuggle more drugs to him in the courthouse during a break in the trial.  During the trial he apparently spat and cursed at the Court, and directed outbursts at agents and witnesses.  Worst of all, a *Fatico* hearing revealed that three informants had reported that Defendant had attempted to take out contracts on the lives of the Assistant United States Attorney and the Drug Enforcement Administration agent assigned to the case.  Judge Broderick at sentencing said that the case involved "the most reckless, ruthless, disregard for human life and human dignity that I have seen in my time in this courthouse, and Mr. Lika was at the center of all that reckless disregard."

Despite his claim of deep remorse for his conduct, Defendant's behavior in prison does not suggest that he has reformed.  He has been disciplined at least a dozen times for possessing drugs or alcohol, twice for possessing weapons, and three times for fighting – most recently based on events that occurred in June 2019.  While he argues that he is too old and sick to constitute a danger to the community, his disciplinary history, including a physical altercation less than a year ago, suggests otherwise.  Defendant cites to cases in which high-level drug dealers serving life sentences or even murderers were granted compassionate release, but those

cases bear no resemblance to his.  For example, the drug dealer in *United States v. Spears*, No. 98-CR-0208, 2019 WL 5190877, at *1 (D. Or. Oct. 15, 2019), had more serious medical conditions from which he was not expected to recover, his offense was non-violent, he was sentenced at a time when crack was punished more harshly than today, and no prison disciplinary history was mentioned.  In *United States v. Wong Chi Fai,* No. 93-CR-1340, 2019 WL 3428504, at *1 (E.D.N.Y. July 30, 2019), the defendant was serving a life sentence for violent crimes, but had a spotless disciplinary record and less than a year to live.  The drug dealer in *United States v. Millan*, No. 1-CR-685 (LAP), Dkt. No. 1060 (S.D.N.Y. Apr. 6, 2020), had committed no violence and had an exemplary prison record.  The mobster in *United States v. Asaro*, No. 17-CR-127, Dkt. No. 176 (E.D.N.Y.  Apr. 17, 2020), was 85 years old, was serving an eight-year sentence, and had had a stroke resulting in expressive aphasia and substantially diminished ability to provide self-care.

      Based on Defendant's record before, during and since his trial, I am not at all convinced that Defendant can be counted on to be a law-abiding if released.  Not only does his persistent record of violations – large and small, old and new – show him to be a danger to the community, but releasing him would undermine several of the § 3553(a) factors.  Release would fail to reflect the nature and seriousness of the offenses, the history and characteristics of the defendant and the need to protect the public.  It would also undermine the need for the sentence to promote respect for the law and provide just punishment.  It bears repeating that Defendant did not just deal large quantities of heroin, kill someone, and try to kill others; he also behaved disgracefully in court, tried to take out a hit on the prosecutor and the case agent, and routinely violated prison rules well after the time one might be expected to outgrow such behavior.

I acknowledge that Defendant has already served a long time, and that a life sentence is an extraordinary punishment. But Defendant earned that sentence, and his conduct since then hardly suggests that it was unmerited. I also acknowledge that the corona virus pandemic may well present risks to Defendant. But Judge Broderick, who knew the case intimately, clearly regarded Defendant as a unique danger and intended that he not live out any portion of his days as a free man. On balance the § 3553(a) factors and the danger Defendant presents to the community outweigh the risks

For the reasons stated above, the motion is denied.

Dated: May 28, 2020
       White Plains, New York

                                    *Cathy Seibel*
                                    CATHY SEIBEL, U.S.D.J.