UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                             ORDER

XHEVEDET LIKA,                        84-CR-499 (CS)

               Defendant.
----------------------------------------------------------x

Seibel, J.

Before the Court is Defendant Xhevedet Lika's third motion for reduction of sentence under 18 U.S.C. § 3582(c)(1), known as "compassionate release." (ECF No. 192 (the "Motion").)[1] Familiarity with my prior rulings and with Defendant's convictions is assumed.

Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 also permits a sentence reduction for extraordinary and compelling reasons, and additionally requires that the Defendant not be a danger to the safety of any other person or the community. *See* U.S.S.G. § 1B1.13(a), p.s. The Policy Statement, as amended, *see United States v. Feliz*, No. 16-CR-809, 2023 WL 8275897, at \*4 (S.D.N.Y. Nov. 30, 2023),[2] identifies

---

[1]Defendant also cites 18 U.S.C. § 3582(c)(2), (*see* Motion at 1, 2), but that statute applies to defendants who have "been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Defendant was sentenced before the Guidelines became effective, so he does not fall within that provision. For the same reason, his references to Sentencing Guidelines Amendments 782, 821 and 822, (*see id.*),  are not relevant.

[2]I agree with the court in *Feliz*, which found that the November 1, 2023 amendments to Policy Statement 1B1.13 have harmonized the Policy Statement with the First Step Act; that *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), therefore does not apply to the new version of Policy Statement 1B1.13; and that "[a]ccordingly, to grant a motion for compassionate

as extraordinary and compelling certain circumstances relating to medical condition, age, family,

and prison abuse, as well as any other circumstances (or combination thereof) of similar gravity.

*See* U.S.S.G. § 1B1.13(b)(1)-(5).  It further provides that changes in the law are not be

considered for purposes of determining whether extraordinary and compelling circumstances

exist (although they may be considered in determining the extent of a reduction if the movant

otherwise establishes such circumstances), unless a defendant has served ten years of an

unusually long sentence that a change in the law (other than a Guidelines amendment that has not

been made retroactive) renders grossly disparate compared to what would be imposed today.  *See*

U.S.S.G. § 1B1.13(b)(6), (c).  The policy statement also provides that rehabilitation alone is not

an extraordinary and compelling circumstance, but may be considered in combination with other

circumstances in determining whether and to what extent a sentence reduction is warranted.  *See*

*id.* § 1B1.13(d); *see also* 28 U.S.C.A. § 994(t) ("Rehabilitation of the defendant alone shall not

be considered an extraordinary and compelling reason.").  "The defendant bears the burden of

showing that the circumstances warrant a sentence reduction." *United States v. Jacques*, No.

20-3276, 2022 WL 894695, at *1 (2d Cir. Mar. 28, 2022) (summary order).

　　　As noted in my order addressing Defendant's previous application, (ECF No. 189), he

may not take advantage of § 3582(c)(1)(A) because he was sentenced before that statute became

effective in 1987.  *See United States v. Rivera*, No. 86-CR-1124, 2020 WL 2094094, at *3-4

(S.D.N.Y. May 1, 2020).  Title 18, United States Code, Section 4205(g), which applies to

---

release, a court must now, in addition to finding that the other elements of the compassionate
release standard are satisfied, also find that granting such relief  is consistent with Policy
Statement 1B1.13." 2023 WL 8275897, at *4 (internal quotation marks and citations omitted).
But the outcome here would be the same even under *Brooker* and the old version of 1B1.13.

defendants sentenced before the effective date of § 3582(c), permits a sentence reduction only if

the Bureau of Prisons ("BOP") moves for such relief, *see id.* at 4, and it has not done so here.

Congress, in enacting the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, modified Section

3582(c)(1)(A) to allow a defendant, not just BOP, to move for sentence reduction.  It may have

chosen to extend that privilege only to prisoners sentenced since 1987 because prisoners

sentenced before 1987 were generally eligible for parole.  As will be discussed, Defendant is

among the few not eligible for parole, because one of the statutes he was convicted of violating,

and on which he received a life sentence, does not permit parole.  Congress clearly intended that

those convicted under that statute should not have the benefit of parole, and it likely concluded

that such defendants should also not have the benefit of § 3582(c)(1)(A).  But I will reach the

merits in an excess of caution.  I also assume that Defendant has exhausted administrative

remedies.

Defendant argues that an *ex post facto* problem is presented by his case because, as best

as I can understand his arguments: (1) life without parole was not authorized at the time of his

offenses in 1984 and earlier, because parole was not abolished until 1987; and/or (2) a life

sentence for violating the continuing criminal enterprise ("CCE") statute, 21 U.S.C. § 848, is no

longer mandatory.  A change in the law is not be considered in the analysis as to whether

extraordinary and compelling circumstances exist, U.S.S.G. § 1B1.13(c), unless the defendant

has served at least ten years of an "unusually long sentence" and the change in the law produces a

gross disparity between the sentenced imposed and the sentence that likely would be imposed

today, *id.* § 1B1.13(b)(6).  This case presents no such disparity, as a CCE defendant like

Defendant – who was responsible for murder and attempted murder along with large-scale heroin

dealing, took out hits on the agent and prosecutor, committed new crimes before and during trial

and behaved despicably in court – would likely get a sentence similar, if not identical, to

Defendant's.  But even if Defendant's argument could be considered, it would fail because there

has been no change in the law affecting Defendant's sentence..

The first argument is without merit because "[l]ife imprisonment without parole [was] a

permissible sentence under the Continuing Criminal Enterprise statute" before 1987.  *United*

*States v. Stewart*, 779 F.2d 538, 540-41 (9th Cir. 1985) (citing 21 U.S.C. § 848(a)(1) (authorizing

life imprisonment) and 21 U.S.C. § 848(c) (parole eligibility provisions do not apply to § 848));

*see Williams v. United States*, 731 F.2d 138, 139 (2d Cir. 1984) (addressing petitioner's claim to

have been unaware at time of plea that his CCE conviction could subject him to life

imprisonment without parole).  It was the CCE statute itself, not the 1987 repeal of parole for all

federal offenses, that made Defendant ineligible for parole.  The second argument fails because

Defendant was not sentenced to mandatory life; his life sentence was imposed as a matter of

discretion.  (*See* ECF No. 188-3 at 5-6 & n.*, 31 (Government's sentencing memorandum from

1985 urging sentence of life rather than a term of years); *id.* at 28 & n.** (noting that § 848

conviction carried minimum prison sentence of ten years and maximum of life)).

The health issues Defendant describes, (*see* Motion at 8), do not include a terminal

diagnosis, suggest he is unable to care for himself or amount to serious deterioration.  *See*

U.S.S.G. §§ 1B1.13(b)(1), (2).  In fact, Defendant asks to be released so that he can care for his

wife, (*see id.*) so he is apparently well enough to do so.  Although he is now 73 years old and has

health conditions not uncommon for that age, his health is not poor enough to present an

extraordinary and compelling reason.  Nor does his wife's health, given the several family

members available to care for her.  *See* U.S.S.G. §§ 1B1.13(b)(3).  And his age alone does not

suffice, given the lack of serious deterioration.  *See* U.S.S.G. §§ 1B1.13(b)(2).

Defendant's application includes letters from family describing how hard for them his

absence has been and how dearly they would like him home.  While I am sure Defendant regrets

not factoring his family into his decisionmaking, it is the unfortunate fact that separation from

family members is one of "the sad and inevitable consequences of incarceration."  *United States*

*v. John*, No. 15-CR-208, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020).  Hardship on the

family almost always results from serious criminal conduct, and while "it is truly unfortunate that

[Defendant]'s incarceration has placed that burden on his [family] . . . that does not constitute an

extraordinary and compelling reason" to reduce his sentence, *id.*; *see United States v. Vailes*, No.

16-CR-297, 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) ("There is no question that a

defendant's incarceration is painful and burdensome to family members, who must bear the

stress of managing their lives without the defendant's help.  It is an unfortunate fact, however,

that these burdens are common to almost all families of incarcerated people, and do not

constitute extraordinary or compelling factors.").

Defendant argues he is remorseful and has been rehabilitated.  He provides

documentation showing that he helps new inmates to acclimate and has not been disrespectful to

staff in his four years at USP Canaan, (*see* ECF No. 192 at 32), and that he has taken courses,

(*see id.* at 34).  He also professes remorse.  (*See id.* at 12-13.)  As I noted in my previous order,

despite his claim of deep remorse for his conduct, Defendant's behavior in prison does not

suggest that he has reformed.  He has been disciplined at least a dozen times for possessing drugs

or alcohol, twice for possessing weapons, and three times for fighting.  His  most recentl"shot"

for fighting was in June 2019, when he was 69 years old.  (*Id.* at 34.)  He was disciplined less

than a year ago for "phone abuse-disrupt monitoring."  It hardly fills the court with confidence

that Defendant will be law-abiding when he was apparently trying to conceal a phone

conversation from the prison authorities.  BOP records reveal that Defendant's issues that need to

be addressed include "anger/hostility" and "antisocial peers."  (*Id.* at 33.)  In short, I am not

convinced that Defendant has been rehabilitated.  Even if he had been, while such efforts "are

commendable and should continue, they do not alone or in combination with his other arguments

constitute an extraordinary and compelling reason for compassionate release."  *White v. United

States*, No. 13-CR-255, 2022 WL 4244219, at *5 (W.D.N.Y. Sept. 15, 2022), *aff'd.*, No.

22-2337-CR, 2023 WL 8446806 (2d Cir. Dec. 6, 2023); *see United States v. Steele*, No.

19-CR-65, 2021 WL 2138829, at *7 (D. Conn. May 26, 2021) ("admirable" efforts at

rehabilitation not extraordinary and compelling alone or in combination with harsh pandemic

prison conditions).  Further, to the limited extent Defendant has behaved, good conduct in prison

is not uncommon, and indeed is expected.  *See United States v. Alvarez*, No. 89-CR-229, 2020

WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020).

Finally, I have considered whether the combination of circumstances presented by

Defendant would rise to a level of gravity similar to those set forth in U.S.S.G. §§ 1B1.13(b)(1)-

(4), *see* U.S.S.G. §§ 1B1.13(b)(5), and conclude they do not.  While the situation into which

Defendant put himself and his family is unfortunate, even tragic, there is nothing particularly

unusual about the results.  A prisoner with a life sentence is inevitably going to decline in health,

not be there for his family, and regret his actions, but, sad to say, that is neither extraordinary nor

compelling.  And it is a result commensurate with Defendant's conduct, as consideration of the §

3553(a) factors reveals.

They weigh strongly against release.  As previously noted, the record of Defendant's case

is not fully available, but what is available shows, as Judge Broderick's sentence reflects, that

Defendant's conduct qualifies him as among the worst of the worst.  He was the most culpable

member of a large-scale heroin importation scheme, and he used violence and ruthlessness to

maintain his power.  His offense apparently included a murder, an attempted murder and a

conspiracy to murder three others.  His conduct before and during his trial was equally

reprehensible, showing an astonishing level of contempt for the Court and the judicial system.

Before his trial he was twice caught with smuggled drugs in the Metropolitan Correctional

Center.  He and an associate were caught attempting to smuggle more drugs to him in the

courthouse during a break in the trial.  During the trial he apparently spat and cursed at the Court,

and directed outbursts at agents and witnesses.  A *Fatico* hearing revealed that three informants

had reported that Defendant had attempted to take out contracts on the lives of the Assistant

United States Attorney and the Drug Enforcement Administration agent assigned to the case.

Judge Broderick at sentencing said that the case involved "the most reckless, ruthless, disregard

for human life and human dignity that I have seen in my time in this courthouse, and Mr. Lika

was at the center of all that reckless disregard."  (ECF No. 188-5 at *7.)

As I also previously held, based on Defendant's record before, during and since his trial, I

am not at all convinced that Defendant can be counted on to be a law-abiding if released.  His

persistent record of violations – large and small, old and new – demonstrates that releasing him

would undermine several of the § 3553(a) factors.  It would fail to reflect the nature and

seriousness of the offenses, the history and characteristics of the defendant and the need to protect the public.  It would also undermine the need for the sentence to promote respect for the law and provide just punishment.  It bears repeating that Defendant did not just deal large quantities of heroin, kill someone, and try to kill others; he also behaved disgracefully in court, tried to take out a hit on the prosecutor and the case agent, and routinely violated prison rules well after the time one might be expected to outgrow such behavior.

Finally, as I said last time, I acknowledge that Defendant has already served a long time and that a life sentence is an extraordinary punishment.  But Defendant earned that sentence, and his conduct since then hardly suggests that it was unmerited.  Judge Broderick, who knew the case intimately, clearly regarded Defendant as a unique danger and intended that he not live out any portion of his days as a free man.

Because Defendant is not eligible for release under § 3582(c)(1)(A), because in any event he has not demonstrated extraordinary and compelling reasons, and because in any event the § 3553(a) factors militate against release, the motion is denied.  The Clerk of Court is respectfully directed to terminate ECF No. 192 and to send a copy of this Order to Xhevedet Lika, No. 10016-054, USP Canaan, U.S. Penitentiary, P.O. Box 300, Waymart, PA 18472.

Dated: April 10, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

8